**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

JANE DOE,

              Plaintiff,

              v.

MAPLEWOOD NURSING HOME;
MAPLEWOOD NURSING AND
REHABILITATION CENTER;
MAPLEWOOD OPERATING, LLC;
MAPLEWOOD NURSING AND
REHABILITATION CENTER PA, L.P.;
PA NURSING HOME GP, LLC; BEDROCK
CARE; BEDROCK CARE GROUP;
BEDROCK CARE CONSULTING
SERVICES,

              Defendants.

Case No. __24-306__

## COMPLAINT

Plaintiff, Jane Doe (hereinafter "Ms. Doe"), by and through her undersigned counsel, Justin Robinette, Esquire, hereby submits and files the following Complaint against Defendants, Maplewood Nursing Home, Maplewood Nursing and Rehabilitation Center, Maplewood Operating LLC, Maplewood Nursing and Rehabilitation Center PA, L.P., PA Nursing Home GP, LLC, Bedrock Care, Bedrock Care Group, and Bedrock Care Consulting Services, averring in support thereof, as follows:

### I.      PARTIES:

1.     Plaintiff, Jane Doe (hereinafter "Plaintiff" or "Ms. Doe") is an adult individual and current resident of the Commonwealth of Pennsylvania, who currently resides at ███████████████████████████████████████████████████████████.

Plaintiff's home address has been redacted consistent with Plaintiff's Motion to Proceed Anonymously and Brief in Support thereof submitted on this same date.

2.      Defendant, Maplewood Nursing Home, is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, with a principal place of business located at 125 West School House Lane, Philadelphia, PA 19144.

3.      Defendant, Maplewood Nursing and Rehabilitation Center, is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, with a principal place of business located at 125 West School House Lane, Philadelphia, PA 19144.

4.      Defendant, Maplewood Operating LLC, is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, with a principal place of business located at 6212 Walnut Street, Philadelphia, PA 19139.

5.      Defendant, Maplewood Nursing and Rehabilitation Center PA, L.P., is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, with a principal place of business located at 201 N. Presidential Blvd., Bala Cynwyd, PA 19004.

6.      Defendant, PA Nursing Home GP, LLC, is a corporation organized and existing under the laws of the State of Maryland, with a principal place of business located at 1922 Greenspring Dr., Ste. #3, Timonium, MD 21093.

7.      Defendant, PA Nursing Home GP, LLC, is a corporation organized and existing under the laws of the State of Maryland, with a principal place of business located at 1922 Greenspring Dr., Ste. #3, Timonium, MD 21093.

8.      Defendants, Bedrock Care, Bedrock Care Group, and/or Bedrock Care Consulting Services, consist of a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, which control and operate nursing home facilities including in the Commonwealth

of Pennsylvania located at 125 West School House Lane, Philadelphia, PA 19144.  At all times

relevant hereto, Bedrock Care, Bedrock Care Group, and/or Bedrock Care Consulting Services,

was Plaintiff's employer.

9.      At all times relevant hereto, Defendants, Maplewood Nursing Home, Maplewood

Nursing and Rehabilitation Center, Maplewood Operating LLC, Maplewood Nursing and

Rehabilitation Center PA, L.P., and PA Nursing Home GP, employed Plaintiff, Ms. Doe.

### III.      JURISDICTION & VENUE:

10.      This Court has subject-matter jurisdiction over Plaintiff's federal claims pursuant

to 28 U.S.C. § 1331 because the claims present a Federal question.

11.      Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over any

state-law claims as those claims arise out of the same set of operative facts as the federal claims.

12.      This Court has personal jurisdiction over Defendants because Defendants'

contacts with this state and judicial district are sufficient for the exercise of jurisdiction over

Defendants to comply with traditional notions of fair play and substantial justice, satisfying the

standard set forth by the United States Supreme Court in International Shoe Company v. State of

Washington, 326 U.S. 310 (1945), and its progeny.

13.      Venue is proper under Title VII of the Civil Rights Act of 1964 ("Title VII")

pursuant to 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices are "alleged to

have been committed" in this judicial district, "the employment records relevant to such

practice[s] are maintained and administered" in this judicial district, and Plaintiff "would have

worked" in this judicial district "but for the alleged unlawful employment practice[s]."  42

U.S.C. § 2000e-5(f)(3).

14.     At all times relevant hereto, Defendants each employed fifteen (15) or more persons for each working day in each of twenty (20) or more calendar weeks in the current or preceding calendar year.

### III.          EXHAUSTION OF ADMINISTRATIVE REMEDIES

15.     Plaintiff has exhausted all applicable administrative remedies and the pertinent notice of right-to-sue in this matter is attached hereto as Exhibit "A."  Plaintiff's name and address are redacted consistent with Plaintiff's Motion to Proceed Anonymously filed on this same date.

### IV.          CLAIMS OF RELIEF

**COUNT I:**
**WRONGFUL TERMINATION BASED ON SEX IN VIOLATION OF TITLE VII OF**
**THE CIVIL RIGHTS ACT OF 1964 ("TITLE VII"), 42 U.S.C. § 2000e, et seq.**
**(Plaintiff, Jane Doe v. Defendants, Maplewood Nursing and Rehabilitation Center,**
**Maplewood Operating LLC, Maplewood Nursing and Rehabilitation Center PA, L.P., PA**
**Nursing Home GP, LLC, Bedrock Care, Bedrock Care Group, and Bedrock Care**
**Consulting Services)**

16.     All of the foregoing paragraphs are hereby incorporated as if the same were more fully set forth herein at length.

17.     Plaintiff identifies as androgynous.

18.     Plaintiff's preferred pronouns are "she," "her," and hers."

19.     Plaintiff has a visible beard.

20.     Plaintiff at all relevant times was certified as a Licensed Practical Nurse ("LPN"). Plaintiff held all of the requisite qualifications for the position she held or sought to hold with Defendants.

21.     Plaintiff applied for an open position in Philadelphia, Pennsylvania with Defendants, as a Charge Nurse, in a supervisory/managerial position.

22.     It is believed and therefore averred that the position for which Plaintiff applied paid overtime.

23.     On or about August 30, 2023, Plaintiff was confirmed for an interview, and on September 1, 2023 attended an interview, for a position identified as a position with "Bedrock Nursing at Maplewood," 125 W. School House Lane, Philadelphia, PA 19144.

24.     Plaintiff was offered the position by Defendants.

25.     Plaintiff attended a two-day mandatory orientation for the position on September 13, 2023 and September 14, 2023.

26.     On September 13, 2023, Felicia LNU, Nursing Educator, referred to the group of new hires as "guys" despite there being, it is believed, six (6) female individuals and one (1) male present.  Plaintiff does not identify as male.  On or about September 13, 2023, on the first day, Plaintiff let the issue go of being referred to as a "guy," when she is androgynous, in the hope that this would not continue on the second day.

27.     On the second day of the scheduled new hire orientation, on or about September 14, 2023, there were three (3) female individuals and no male individuals present for the orientation.  Felicia LNU, Nursing Educator, again referred to the entire group as "guys." Plaintiff, on this date, requested not to be referred to as a "guy."  It was then that Felicia LNU, Nursing Educator, stated to Plaintiff, "Everybody gets called guys," or words to that effect.

28.     Plaintiff replied to Felicia LNU, Nursing Educator, that "it is illegal to misgender me," or words to that effect.

29.     Felicia LNU, Nursing Educator, then proceeded to instruct Plaintiff to see Cynthia LNU, Director of Nursing. Cynthia LNU, the Director of Nursing, stated to Plaintiff, "This is not the place for political stances," or words to that effect.

30.     Cynthia LNU, Director of Nursing, also stated to Plaintiff, on or about the same date, that Plaintiff needed to, "Take care of your medical issue," or words to that effect.

31.     Plaintiff brought up that this was a matter of cultural competency which had been discussed on the first day, or words to that effect.  Cynthia LNU, Director of Nursing, stated, "That applies to the residents and doesn't apply to employees," or words to that effect.

32.     Cynthia LNU, Director of Nursing, instructed Plaintiff to leave the facility. Plaintiff was wrongfully discharged/terminated on or about September 14, 2023, on account of discrimination and in retaliation for Plaintiff's protected conduct/activity.

33.     Defendants did not pay Plaintiff for the second day of orientation, despite paying Plaintiff for the first day of orientation, on account of discrimination and in retaliation for Plaintiff's protected conduct/activity.

34.     Defendants wrongfully terminated/discharged Plaintiff based on sex, gender identity, and gender stereotyping.

35.     Defendants denied Plaintiff the terms, conditions, benefits, and privileges of employment and otherwise adversely affected Charging Party's employment on account of sex, gender identity, and gender stereotyping.

36.     It is believed and therefore averred that Defendants replaced Plaintiff with an employee who is cisgender, that Defendants offered Plaintiff's former position to an employee who is cisgender, and/or that Defendants continue to seek applicants for Plaintiff's former position with Plaintiff's qualifications.

37.     Defendants have discriminated against Plaintiff because of her sex identified at birth and another today, under Bostock v. Clayton County, Georgia, 590 U.S. ___, 140 S. Ct. 1731, 1741 (2020).  Bostock recognized, "By discriminating against transgender persons, the

employer unavoidably discriminates against persons with one sex identified at birth and another today." Bostock v. Clayton County, Georgia, 590 U.S. ___, 140 S. Ct. 1731, 1746 (2020).

**WHEREFORE**, Plaintiff, Jane Doe, demands judgment in her favor and against Defendants, individually and/or jointly and severally, in an amount in excess of $150,000.00, which will fully and fairly compensate Plaintiff for any and all back and front pay, overtime, benefits, bonuses, commissions, and promotions she would have received; compensatory damages for pain and suffering, mental distress, and emotional distress; punitive damages; pre- and post-judgment interest, reasonable attorneys' fees, costs of suit; and equitable/injunctive relief requiring Defendants to provide a neutral employment reference for Plaintiff, to conduct sensitivity training for all of Defendants' employees, and such other and further relief that this Court deems just, proper, and equitable.

**COUNT II:**
**RETALIATORY DISCHARGE/TERMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e, et seq.**
**(Plaintiff, Jane Doe v. Defendants, Maplewood Nursing and Rehabilitation Center, Maplewood Operating LLC, Maplewood Nursing and Rehabilitation Center PA, L.P., PA Nursing Home GP, LLC, Bedrock Care, Bedrock Care Group, and Bedrock Care Consulting Services)**

38.    All of the foregoing paragraphs are hereby incorporated as if the same were more fully set forth herein at length.

39.    Plaintiff attended the first day of her new hire orientation and was referred to as a "guy" despite there being mostly women present.  Plaintiff let the issue go of being referred to as a "guy" when she is androgynous on the first day in the hope that this would not continue on the second day.

40.    On the second day of the scheduled new hire orientation, on or about September 14, 2023, there were three (3) female individuals and no male individuals present for the

7

orientation.  Felicia LNU, Nursing Educator, again referred to the entire group as "guys."
Plaintiff, on this date, requested not to be referred to as a "guy."  It was then that Felicia LNU,
Nursing Educator, stated to Plaintiff, "Everybody gets called guys," or words to that effect.

41.     Plaintiff replied to Felicia LNU, Nursing Educator, that "it is illegal to misgender
me," or words to that effect.

42.     Felicia LNU, Nursing Educator, then proceeded to instruct Plaintiff to see Cynthia
LNU, Director of Nursing. Cynthia LNU, the Director of Nursing, stated to Plaintiff, "This is not
the place for political stances," or words to that effect.

43.     Cynthia LNU, Director of Nursing, also stated to Plaintiff, on or about the same
date, that Plaintiff needed to, "Take care of your medical issue," or words to that effect.

44.     Plaintiff brought up that this was a matter of cultural competency which had been
discussed on the first day, or words to that effect.  Cynthia LNU, Director of Nursing, stated,
"That applies to the residents and doesn't apply to employees," or words to that effect.

45.     Cynthia LNU, Director of Nursing, instructed Plaintiff to leave the facility.
Plaintiff was wrongfully discharged/terminated on or about September 14, 2023, on account of
discrimination and in retaliation for Plaintiff's protected conduct/activity.

46.     Defendants did not pay Plaintiff for the second day of orientation, despite paying
Plaintiff for the first day of orientation, on account of discrimination and in retaliation for
Plaintiff's protected conduct/activity.

47.     Defendants wrongfully terminated/discharged Plaintiff based on sex, gender
identity, and gender stereotyping.

48.     Defendants denied Plaintiff the terms, conditions, benefits, and privileges of employment and otherwise adversely affected Charging Party's employment on account of sex, gender identity, and gender stereotyping.

49.     Plaintiff rebuffed misgendering occurring against Plaintiff in the workplace constituting a form of protected conduct/activity.

50.     Plaintiff opposed conduct that constituted discrimination and/or harassment based on sex constituting a form of protected conduct/activity.

51.     Defendants terminated/discharged Plaintiff in retaliation for her protected conduct/activity.

**WHEREFORE**, Plaintiff, Jane Doe, demands judgment in her favor and against Defendants, individually and/or jointly and severally, in an amount in excess of $150,000.00, which will fully and fairly compensate Plaintiff for any and all back and front pay, overtime, benefits, bonuses, commissions, and promotions she would have received; compensatory damages for pain and suffering, mental distress, and emotional distress; punitive damages; pre- and post-judgment interest, reasonable attorneys' fees, costs of suit; and equitable/injunctive relief requiring Defendants to provide a neutral employment reference for Plaintiff, to conduct sensitivity training for all of Defendants' employees, and such other and further relief that this Court deems just, proper, and equitable.

**COUNT III:**
**WRONGFUL DISCHARGE/TERMINATION BASED ON DISABILITY IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT ("ADA"), AS AMENDED, 42 U.S.C. § 12101, <u>et seq.</u>**
**(Plaintiff, Jane Doe v. Defendants, Maplewood Nursing and Rehabilitation Center, Maplewood Operating LLC, Maplewood Nursing and Rehabilitation Center PA, L.P., PA Nursing Home GP, LLC, Bedrock Care, Bedrock Care Group, and Bedrock Care <u>Consulting Services)</u>**

52.     All of the foregoing paragraphs are hereby incorporated as if the same were more fully set forth herein at length.

53.     Plaintiff was perceived or regarded as disabled by Defendants.

54.     Defendants perceived Plaintiff as having a medical condition.

55.     Plaintiff has a visible beard.

56.     Defendants discriminated against Plaintiff based on Plaintiff's gender identity during Plaintiff's employment.

57.     Plaintiff identifies that the Americans with Disabilities Act ("ADA") includes "gender identity disorders."

58.     More specifically, Section 12211(b) of the ADA, provides that the definition of a disability does not include "transvestism, transsexualism, pedophilia, exhibitionism, voyeurism, ***gender identity disorders not resulting from physical impairments***, [and] other sexual behavior disorders."  42 U.S.C. § 12211(b) (emphasis added).

59.     Plaintiff does not have a diagnosis of gender dysphoria ("GD") from a healthcare provider.

60.     The "Gender Identity Disorder" ("GID") exclusion codified at 42 U.S.C. § 12211(b) is discriminatory and violates due process, to wit:

61.     Plaintiff is a member of a protected class of people who are androgynous.

62.     The GID exclusion fails strict scrutiny which is the standard of review applicable to people who are androgynous.

63.     The GID exclusion fails heightened or intermediate scrutiny applicable to sex-based classifications.  See Bostock v. Clayton County, Georgia, Nos. 17-1618, 590 U.S. ___, 140

S. Ct. 1731, 2020 WL 3146686 (U.S. June 15, 2020) (holding that discrimination based on transgender status constitutes discrimination based on sex).

64.     The GID exclusion violates the "rational basis with bite" standard of review found to be applicable to anti-LGBTQIA+ bias.  See, e.g., Romer v. Evans, 517 U.S. 620 (1996); Lawrence v. Texas, 539 U.S. 558 (2003); United States v. Windsor, 133 S. Ct. 2576 (2013); Obergefell v. Hodges, 135 S. Ct. 2584 (2015) (applying the 'rational basis with bite' standard of review).

65.     The GID exclusion fails the rational basis standard of review.  There is no rational basis for the GID exclusion.  "[A] bare congressional desire to harm a politically unpopular group cannot justify disparate treatment of that group."  Dep't of Agriculture v. Moreno, 413 U.S. 528, 534-35 (1973).

66.     The GID exclusion is unconstitutional on its face.

67.     The GID exclusion is unconstitutional as applied to the Plaintiff.

68.     The GID exclusion has created second-class citizens of people who are gender non-conforming.

69.     The GID exclusion deprives Plaintiff and other people who are gender non-conforming of dignity and due process.

70.     It is time for a judicial determination of whether the so-called Gender Identity Disorder ("GID") exclusion is constitutional.

**WHEREFORE**, Plaintiff, Jane Doe, demands judgment in her favor and against Defendants, individually and/or jointly and severally, in an amount in excess of $150,000.00, which will fully and fairly compensate Plaintiff for any and all back and front pay, overtime, benefits, bonuses, commissions, and promotions she would have received; compensatory

damages for pain and suffering, mental distress, and emotional distress; punitive damages; pre- and post-judgment interest, reasonable attorneys' fees, costs of suit; and equitable/injunctive relief requiring Defendants to provide a neutral employment reference for Plaintiff, to conduct sensitivity training for all of Defendants' employees, and such other and further relief that this Court deems just, proper, and equitable.

**COUNT IV:**
**FAILURE-TO-ACCOMMODATE DISABILITY IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT ("ADA"), AS AMENDED, 42 U.S.C. § 12101, <u>et seq.</u>**
**(Plaintiff, Jane Doe v. Defendants, Maplewood Nursing and Rehabilitation Center, Maplewood Operating LLC, Maplewood Nursing and Rehabilitation Center PA, L.P., PA Nursing Home GP, LLC, Bedrock Care, Bedrock Care Group, and Bedrock Care <u>Consulting Services)</u>**

71.     All of the foregoing paragraphs are hereby incorporated as if the same were more fully set forth herein at length.

72.     Plaintiff identifies that the Americans with Disabilities Act ("ADA") includes "gender identity disorders."

73.     More specifically, Section 12211(b) of the ADA, provides that the definition of a disability does not include "transvestism, transsexualism, pedophilia, exhibitionism, voyeurism, ***gender identity disorders not resulting from physical impairments***, [and] other sexual behavior disorders." 42 U.S.C. § 12211(b) (emphasis added).

74.     Plaintiff does not have a diagnosis of gender dysphoria ("GD") from a healthcare provider.

75.     Defendant failed to accommodate Plaintiff.

76.     During Plaintiff's employment, Defendants failed to accommodate Plaintiff by failing to treat Plaintiff consistent with her gender identity.

77.     Plaintiff does not have a diagnosis of gender dysphoria ("GD") from a healthcare provider.

78.     The "Gender Identity Disorder" ("GID") exclusion codified at 42 U.S.C. § 12211(b) is discriminatory and violates due process, to wit:

79.     Plaintiff is a member of a protected class of people who are androgynous.

80.     The GID exclusion fails strict scrutiny which is the standard of review applicable to people who are androgynous.

81.     The GID exclusion fails heightened or intermediate scrutiny applicable to sex-based classifications.  See Bostock v. Clayton County, Georgia, Nos. 17-1618, 590 U.S. ___, 140 S. Ct. 1731, 2020 WL 3146686 (U.S. June 15, 2020) (holding that discrimination based on transgender status constitutes discrimination based on sex).

82.     The GID exclusion violates the "rational basis with bite" standard of review found to be applicable to anti-LGBTQIA+ bias.  See, e.g., Romer v. Evans, 517 U.S. 620 (1996); Lawrence v. Texas, 539 U.S. 558 (2003); United States v. Windsor, 133 S. Ct. 2576 (2013); Obergefell v. Hodges, 135 S. Ct. 2584 (2015) (applying the 'rational basis with bite' standard of review).

83.     The GID exclusion fails the rational basis standard of review.  There is no rational basis for the GID exclusion.  "[A] bare congressional desire to harm a politically unpopular group cannot justify disparate treatment of that group." Dep't of Agriculture v. Moreno, 413 U.S. 528, 534-35 (1973).

84.     The GID exclusion is unconstitutional on its face.

85.     The GID exclusion is unconstitutional as applied to the Plaintiff.

86.     The GID exclusion has created second-class citizens of people who are gender non-conforming.

87.     The GID exclusion deprives Plaintiff and other people who are gender non-conforming of dignity and due process.

88.     It is time for a judicial determination of whether the so-called Gender Identity Disorder ("GID") exclusion is constitutional.

**WHEREFORE**, Plaintiff, Jane Doe, demands judgment in her favor and against Defendants, individually and/or jointly and severally, in an amount in excess of $150,000.00, which will fully and fairly compensate Plaintiff for any and all back and front pay, overtime, benefits, bonuses, commissions, and promotions she would have received; compensatory damages for pain and suffering, mental distress, and emotional distress; punitive damages; pre- and post-judgment interest, reasonable attorneys' fees, costs of suit; and equitable/injunctive relief requiring Defendants to provide a neutral employment reference for Plaintiff, to conduct sensitivity training for all of Defendants' employees, and such other and further relief that this Court deems just, proper, and equitable.

## <u>JURY DEMAND</u>

Plaintiff hereby demands a trial by jury of eight (8) members on all counts so triable.

Respectfully submitted,

DATED:  <u>01/23/2024</u>

BY: _Justin F. Robinette_

Justin Robinette, Esquire
PA Supreme Court I.D. No. 319829
P.O. Box 15190
Philadelphia, PA 19130-9998
Tel: (267) 595-6254
Fax: (267) 592-3067

14

<u>Justin@JRobinetteLaw.com</u>

*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I, Justin F. Robinette, Esquire, Attorney for Plaintiff, in the above-named matter, do hereby certify that on this 23rd day of JANUARY, 2024, the foregoing Complaint was served via the method set forth below, on the date set forth below, or as soon thereafter as service can be effectuated:

### VIA ELECTRONIC MAIL WITH WAIVER OF SERVICE OF SUMMONS

Elizabeth Butler, Esquire
Kaufman Borgeest & Ryan LLP
9 Campus Drive
Parsippany, NJ 07054
ebutler@kbrlaw.com

Respectfully submitted,

DATED: 01/23/2024        BY:   */s/ Justin Robinette, Esquire*
Justin Robinette, Esquire
PA Supreme Court I.D. No. 319829
P.O. Box 15190
Philadelphia, PA 19130-9998
Tel: (267) 595-6254
Fax: (267) 592-3067
justin@jrobinettelaw.com

*Attorney for Plaintiff*